**Harold M. KAHL, Respondent,**

v.

**MINNESOTA WOOD SPECIALTY, INC., Employer-Petitioner,**

**and**

**Employers Mutual Liability Insurance Co., Insurer-Petitioner,**

**Warren Spannaus, Attorney General, State of Minnesota, Respondent.**

No. 48961.

Supreme Court of Minnesota.

March 30, 1979.

396

Ochs, Larsen, Klimek & Olson, Candice E. Hektner and Gerard J. Ochs, Minneapolis, Richards, Montgomery, Cobb & Bassford and Lynn G. Truesdell, III, Minneapolis, for employer-petitioner and insurer-petitioner.

William C. Hoffman, St. Paul, for Kahl.

Warren Spannaus, Atty. Gen., Richard Allyn, Sol. Gen., Winston Ehlmann, Asst. Atty. Gen., St. Paul, for State of Minnesota.

ROGOSHESKE, Justice.

The narrow issue presented by these proceedings initiated in this court for a writ of prohibition is whether, in a workers' compensation proceeding to impose a penalty for unreasonably and vexatiously delaying payment pursuant to Minn.St. 176.225, an employer-insurer is precluded from asserting the attorney-client privilege. We hold that the applicable provisions of our workers' compensation laws do not abrogate the common-law privilege reiterated in § 595.-02(2) and that it may be asserted to prevent disclosure of any communications falling within the purpose and scope of the privilege.

■ Following an award of compensation benefits for a back injury, the employee filed an amended petition seeking the imposition of a penalty pursuant to § 176.225, upon allegations that the employer-insurer unreasonably and vexatiously refused and delayed payment of benefits. At the hearing and in response to the employee's subpoena, the insurer produced its file, but its counsel informed the compensation judge that documents pertaining to communications between the insurer and its counsel had been removed upon claims of privilege and "attorney's work product." [1] Although of the view that the privilege did not apply, the judge did not order full disclosure, finding that the delay in payment of benefits was due to the employee's refusal, after waiver of medical privilege, to allow the insurer unconditional disclosure of the employee's preinjury medical records. [2] Upon the employee's appeal, the Workers' Compensation Court of Appeals issued an order reciting that the penalty issue "creates the need of the examination of the insurer's file" and requiring the insurer to furnish the court its "complete original file * * *

without any deletions whatsoever." On petition of employer-insurer, these prohibition proceedings followed.

■ The employer-insurer contends that the order violates § 595.02(2). This statute provides:

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such attorney be examined as to such communication or advice, without the client's consent."

The court of appeals found § 595.02(2) not applicable by reason of § 176.225, which provides in part:

"Subdivision 1. Upon reasonable notice and hearing or opportunity to be heard, the division or upon appeal, the workers' compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

"(a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or,

"(b) unreasonably or vexatiously delayed payment; or,

"(c) neglected or refused to pay compensation; or,

"(d) intentionally underpaid compensation.

"Subd. 2. To determine whether an employer or insurer has become subject to the payment provided by subdivision 1, the division or the workers' compensation court of appeals upon appeal may exam-

---

1. Although employer-insurer asserts that nondisclosure of nonprivileged materials is also justified by Rule 26.02(3), Rules of Civil Procedure, governing pretrial discovery of so-called "attorney's work product," we decline to address the issue, because those rules govern only procedures in the district courts of this state, and the extent to which they are followed in workers' compensation proceedings is neither revealed by the record nor adequately

presented. Moreover, it appears doubtful that an administrative rule authorized by Minn.St. 176.669, subd. 2, limiting such disclosures would be consistent with the statutes governing proceedings to assess penalties under § 176.225.

2. See, *Danussi v. Easy Wash, Inc.*, 270 Minn. 465, 134 N.W.2d 138 (1965).

ine the books and records of the person relating to the payment of compensation, and may require him to furnish any other information relating to the payment of compensation."

The employee, in support of the order, points to § 176.411, subd. 1, which provides:

"Except as otherwise provided by this chapter, when the worker's compensation court of appeals, a judge of the worker's compensation court of appeals or compensation judge makes an investigation or conducts a hearing, it or he is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure. The investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties.

"Findings of fact shall be based upon competent evidence only."

Although the broad language used in these provisions appears to lend support to the challenged order, our consideration of the history and policy underlying the attorney-client privilege convinces us that the privilege should not be abrogated in compensation proceedings, including those concerning an assessment of penalties. Section 595.02(2) was first enacted in 1851. It was recognized in *Struckmeyer v. Lamb,* 75 Minn. 366, 77 N.W. 987 (1899), as embodying the common-law privilege, which since the 18th Century has had universal acceptance as indispensable to an attorney's professional relationship with his client. Unlike the exclusionary rules of evidence, which have for their purpose finding the truth of a factual dispute by excluding unreliable, prejudicial, or misleading evidence, the rule suppressing disclosure of confidential communications from the client as well as advice from the attorney has for its purpose protecting a narrowly prescribed relationship, preservation of which by prohibiting such disclosure is regarded as of

greater social importance than the benefits which would be gained by the state's exercise of its coercive or supervisory powers to compel the client and the attorney to make their private discussions public.[3] This ancient and well-established resolution of conflicting social values between accurate factfinding and protection of the attorney-client relationship promotes the administration of our adversary system of justice by insuring that a client with claims that may lead to litigation can best pursue them by employing an attorney. The attorney can only effectively fulfill his roles as counselor, intermediary, and advocate if the client, assured of confidentiality, is wholly free to completely and candidly disclose all the facts, favorable or unfavorable, to him.

We have recognized that § 176.411, subd. 1, plainly evinces the legislature's intention that workers' compensation proceedings are not to be governed by strict rules of evidence. *Johnson v. Iverson,* 175 Minn. 319, 221 N.W. 65, 222 N.W. 508 (1928); *Debeltz v. Oliver Iron Min. Co.,* 172 Minn. 549, 216 N.W. 240 (1927). However, the attorney-client privilege should not be viewed as merely an exclusionary rule, even though at the trial stage it may incidentally and secondarily have that effect. Rather, the ancient history and wide recognition of the attorney-client privilege persuades us that the rule must be regarded as peculiarly related to the practice of law and our adversary system of administering justice and, therefore, not properly within the scope of § 176.411, subd. 1. The inherent power of this court to regulate the practice of law, based on Minn.Const. art. 3, § 1, and recognized by the legislature in Minn.St. 480.05, further supports our conclusion. Accordingly, we construe § 176.225, subd. 2, as permitting the court of appeals to examine the employer-insurer's books, records, and other information relating to the pay-

---

**3.** See, 8 Wigmore, Evidence (McNaughton Rev.) § 2291; McCormick, Evidence, § 87; Louisell, *Confidentiality, Conformity and Confusion: Privileges in Federal Court Today,* 31 Tulane L.Rev. 101; Radin, *The Privilege of Confidential Communication between Lawyer and Client,* 16 Calif.L.Rev. 487; Gardner, *A Re-Evaluation of the Attorney-Client Privilege,* 8 Villanova L.Rev. 279 and 447.

ment of compensation except for materials privileged by reason of § 595.02(2).[4]

■ The attorney general urges that § 176.225, subd. 2, is a regulatory statute and that public policy requires us to construe it as conferring plenary power upon the court of appeals in order to deter employers-insurers from the types of conduct proscribed by § 176.225, subd. 1. Although we are not persuaded by this argument, we recognize that only materials which are in fact privileged are excepted from the sweep of § 176.225, subd. 2, and that the employers-insurers should not determine the extent of privilege, even though they have the right to assert it. See, *State v. Lender,* 266 Minn. 561, 124 N.W.2d 355 (1963).[5]

■ The issue of whether communications withheld by counsel in this case fall within the scope of the privilege is not presented. However, we observe that the privilege is not permitted to prevent disclosure of communications relating to commission of future crime or fraud. In light of the employer's duty to pay compensation promptly when an employee is entitled to it, we are inclined to the view that the privilege should not extend to protecting any "deliberate plan to defy the law and oust another person of his rights * * *." 8 Wigmore, Evidence (McNaughton Rev.) § 2298, p. 577. We observed in *Minneapolis Star & Tribune Co. v. H. R. A.,* 310 Minn. 313, 251 N.W.2d 620 (1976), that, as a barrier to testimonial disclosure, the privilege tends to suppress relevant facts and must be strictly construed. Its effect in a penalty proceeding is similarly suppressive, and we hold that the same strict construction should be employed.

Obviously, assertion of privilege by parties in penalty proceedings also requires a preliminary determination of what evidence is within the scope of the privilege.[6] It would seem appropriate for the Department of Labor and Industry, under the rulemaking power reposed in the department by § 176.669, subd. 2,[7] to establish a procedure, perhaps patterned after that provided in § 176.351, subd. 4,[8] whereby the district court as a disinterested tribunal can examine materials for which protection is sought and rule on whether they are in fact privileged.

4. See, also, Minn.St. 481.06(5) and Canon 4, Code of Professional Responsibility, which places an all-pervasive obligation upon a lawyer to preserve the confidences and secrets of a client.

5. A corporate client may assert the privilege. See, *Radiant Burners, Inc. v. American Gas Assn.,* 320 F.2d 314 (7 Cir.), certiorari denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963), reversing, 207 F.Supp. 771 (D.C.1962) and 209 F.Supp. 321 (D.C.1962). See, also, 3 Jones, Evidence (6 ed.) § 21.11; Annotations, 98 A.L.R.2d 241, 9 A.L.R.Fed. 685. The privilege may be claimed in connection with communications to "house counsel," as are the insurer's attorneys here. *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950); *United States v. Aluminum Co. of America,* 193 F.Supp. 251 (N.D.N.Y.1960).

6. Cf., *Radiant Burners, Inc. v. American Gas Assn. supra,* in which the court expressly stated that the attorney-client privilege is not a blanket privilege and that limitations surrounding any information sought must be determined for each document separately and considered on a case-by-case basis. See, also, *United States v. United Shoe Machinery Corp., supra,* in which the court observed that a high percentage of communications passing to or from house counsel undoubtedly falls outside the privilege because they report or comment on information coming from persons outside the corporation or from public documents, or are summaries of conferences held with or in the presence of outsiders.

7. Section 176.669, subd. 2, provides: "The department shall make such rules, regulations, and orders with reference to procedure as it deems necessary not inconsistent with Laws 1943, Chapter 633."

8. Section 176.351, subd. 4, provides: "Where a person does not comply with an order or subpoena, the commissioner of the department of labor and industry, the worker's compensation court of appeals, or the commissioner or compensation judge concerned, may apply to the district court in the county in which the petition is pending for issuance of an order compelling obedience. Upon such an application, the district court shall compel obedience to the order or subpoena by attachment proceedings as for contempt in the case of disobedience of a similar order or subpoena issued by the district court."

Let the writ issue prohibiting the court of appeals from enforcing its order requiring the insurer to produce its complete file "without any deletions whatsoever."