**David O'CONNOR, Petitioner,**

v.

**The Honorable Robert F. JOHNSON, Judge of County Court, County of Ramsey, Respondent.**

No. 49232.

Supreme Court of Minnesota.

Nov. 9, 1979.

David W. Nord, St. Paul, for petitioner.

David O'Connor, pro se.

Thomas W. Foley, County Atty., Steven C. DeCoster, and Paul E. Lindholm, Asst. County Attys., St. Paul, for respondent.

Henson & Efron, Robert F. Henson, Alan C. Eidsness and David F. Fisher, Minneapolis, for Minn. State Bar Assn.

Jack S. Nordby, St. Paul, William F. Mauzy, Minneapolis, John R. Wylde, St. Paul, for Nat'l Assn. of Criminal Defense Lawyers.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Gary Hansen, Special Asst. Atty. Gen., St. Paul, for Minnesota Atty. Gen.

WAHL, Justice.

This is an original proceeding in the Supreme Court pursuant to Rule 120, Rules of Civil Appellate Procedure, for a writ of prohibition directing respondent, a Ramsey County Municipal Court Judge, to quash an order upholding the validity of a search warrant of an attorney's office. Writ granted.

This case arose from an investigation into certain liquor establishments by the St. Paul Police Department. Believing that false written statements had been made in the applications for liquor licenses for Patrick's Lounge, the police applied for a search warrant to obtain the business records of Patrick's Lounge. When the warrant was executed on July 24, 1978, the accountant indicated that the business records of the former owners were in the possession of attorney David O'Connor, petitioner in this case. The police then obtained a warrant to search petitioner's office for these records.

On July 25, 1978, when three police officers appeared at petitioner's office to execute the warrant, petitioner refused to permit the search and indicated that all his records concerning Patrick's Lounge were contained in a box and his work product file. Petitioner accompanied the police officers to respondent's chambers to move to quash the warrant. Respondent permitted petitioner to retain his work product file but ordered him to leave the box of records in the court's custody. On August 4, 1978, respondent held the box of records not privileged and the search warrant valid. He ordered that the box be turned over to the St. Paul Police Department and that a representative of the Ramsey County Attorney's Office obtain all documents pertaining to Patrick's Lounge from petitioner's work product file after determining that the documents were not protected by the attorney-client privilege or the work product doctrine. After petitioner applied to this court for a writ of prohibition to quash the search warrant, respondent amended his order so that the court, rather than a representative of the county attorney's office, would determine which documents were protected by the attorney-client privilege or the work product doctrine. Only those documents which are not so protected would be given to the police department.

In his application for a writ of prohibition petitioner challenges only that portion of the court's order requiring him to turn over his work product file to the court for this determination. He has apparently abandoned his claim to the box of records. Because the attorney was present so that his office was not searched as the officers had a right to do in executing the warrant, and because the officers were willing to allow the attorney to bring the file and box of records before the court to make a determination of privilege before a seizure was made, it would be relatively easy to find on this record no violation of constitutional rights, the attorney-client privilege, or the work product doctrine, and thus to approve a hybrid procedure—part warrant, part subpoena. This we decline to do. We must instead examine the validity of the search warrant upon which the court's order was based to determine the propriety of that order. The case thus presents us with the very difficult and delicate issue of the reasonableness of searching an attorney's office for documents and files of a particular client to find evidence of criminal wrongdoing.[1] We have here no claim of wrongdoing by the attorney, as in *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), nor have we taxpayers urging a Fifth Amendment claim where their attorneys are directed by summons, not by warrant, to produce documents for the I.R.S., as in *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), and *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

To be valid, a search warrant must be based on probable cause, be supported by oath or affirmation, and describe with particularity the place to be searched and the items to be seized. Minn.Const. Art. I,

§ 10; U.S.Const. Amend. IV. There is no question in the instant case that the warrant is based on probable cause and supported by an affidavit. We must decide, however, whether the proposed search was reasonable, even though there was compliance with the literal terms of the constitutional and statutory[2] provisions respecting warrants, in light of the attorney-client privilege, client confidentiality, the work product doctrine, and the criminal defendant's constitutional right to counsel.

The attorney-client privilege, which was codified in Minnesota in 1851, Minn.St. 595.-02(2),[3] embodies, as we recognized in *Struckmeyer v. Lamb*, 75 Minn. 366, 77 N.W. 987 (1899), the common-law privilege which has been universally accepted since the 19th Century as indispensable to an attorney's professional relationship with his client. In our most recent discussion of this privilege we stated:

"* * * Unlike the exclusionary rules of evidence, which have for their purpose finding the truth of a factual dispute by excluding unreliable, prejudicial, or misleading evidence, the rule suppressing disclosure of confidential communications from the client as well as advice from the attorney has for its purpose protecting a narrowly prescribed relationship, preservation of which by prohibiting such disclosure is regarded as of greater social importance than the benefits which would be gained by the state's exercise of its coercive or supervisory powers to compel the client and the attorney to make their private discussions public. This ancient and well-established resolution of conflicting social values between accurate factfinding and protection of the attorney-client relationship promotes the administration of our adver-

---

1. The court has been aided in its deliberations by amicus curiae briefs filed by the Minnesota State Bar Association, the National Association of Criminal Defense Lawyers, Inc., and the Minnesota Attorney General.

2. We do not independently examine the statutory provisions, Minn.St. 626.04 to 626.17, because they are identical to the constitutional provisions.

3. Minn.St. 595.02(2) provides: "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such attorney be examined as to such communication or advice, without the client's consent; * * *."

sary system of justice by insuring that a client with claims that may lead to litigation can best pursue them by employing an attorney. The attorney can only effectively fulfill his roles as counsellor, intermediary, and advocate if the client, assured of confidentiality, is wholly free to completely and candidly disclose all the facts, favorable or unfavorable, to him." *Kahl v. Minnesota Wood Speciality, Inc.*, 277 N.W.2d 395, 398 (Minn.1979).

In *Kahl* we held that the provisions of the workers compensation act for proceedings to impose a penalty for unreasonably and vexatiously delaying payment of employee benefits did not abrogate the attorney-client privilege despite the fact that these provisions relaxed the rules of evidence. See, Minn.St. 176.225, subd. 2; Minn.St. 176.411. In the instant case we are again faced with the need to protect and preserve this privilege. The indispensable relationship of trust between client and attorney and the adequate functioning of our adversary system of justice can only be ensured when the client can completely disclose all the facts—favorable and unfavorable—without the fear that the attorney's files will be seized by police officers pursuant to a search warrant.

An attorney is not only precluded from revealing confidential communications by the attorney-client privilege, but he is also required by Canon 4 of the Code of Professional Responsibility to preserve the confidences and secrets of his clients. Ethical Consideration 4–1 states:

"Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his

independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance."

This ethical obligation is broader than the attorney-client privilege of § 595.02(2). EC 4–4, Code of Professional Responsibility.

To protect confidential communications between an attorney and his clients, the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), developed a qualified privilege which prevented an attorney's work product from being readily discoverable despite the policy of broad discovery under the Federal Rules of Civil Procedure. The court noted that few attorneys would keep written notes on cases if their work product was easily discoverable and that without such notes effective representation of clients would be difficult and the entire legal system would suffer. An attorney's work product may be discovered:

"* * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 26.02(3), Minnesota Rules of Civil Procedure.

See, also, Rule 9.02, subd. 3, Minnesota Rules of Criminal Procedure. The work product doctrine is distinct from and broader than the attorney-client privilege and is especially important in criminal cases where:

"The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, 238, 95

S.Ct. 2160, 2170, 45 L.Ed.2d 141, 153 (1975).

If police are permitted to search through an attorney's files for documents listed in an otherwise valid warrant, the protection afforded an attorney's work product by this doctrine will be destroyed.

A criminal defendant's constitutional right to counsel, guaranteed by Article I, section 6 of the Minnesota Constitution and the Sixth Amendment of the United States Constitution, must also be weighed in determining the reasonableness of a search warrant under Article I, section 10 of the Minnesota Constitution and the Fourth Amendment of the United States Constitution. Not only is effective assistance of counsel a constitutional mandate, it is also necessary to an adversary system of justice to protect the fairness and integrity of the system. See, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). As the Ninth Circuit Court of Appeals so well stated in *Baird v. Koerner*, 279 F.2d 623, 629–30 (9 Cir. 1960):

> "This assistance [of adequate counsel] can be made safely and readily available only when the client is free from the consequences of apprehension of disclosure by reason of the subsequent statements of the skilled lawyer."

In protecting these rights and privileges we must take care to protect not only the rights of the client who is suspected of criminal wrongdoing in the case which prompts the search warrant, but also the rights of all clients of the attorney whose office is being searched. This leads to a consideration of the particularity requirement regarding the place to be searched. In *State v. Streitz*, 258 N.W.2d 768, 771 (Minn.1977), we stated:

> "The Fourth Amendment requirement that a search warrant 'particularly' describe the place to be searched and the persons or things to be seized is designed to prevent general, exploratory searches.
>
> " 'General warrants, of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion *per se*,

but of a general, exploratory rummaging in a person's belongings . . . .' " *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971) . . . .' *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627, 642 (1976)."

Even though the warrant in the instant case describes the things to be seized with particularity and the location of the office in which they may be found, a search of that office for the items specified of necessity involves a general and exploratory search of all of the attorney's files. It was only by chance that the attorney in this case was present when the police officers came to his office to execute the warrant. Had he been absent and this warrant were held valid under these circumstances, the police would have been free to rifle through his files until they found the documents for which they were searching.

The warrant describes the items to be seized as:

> "Business records, including but not limited to contracts or agreements for the lease or purchase of property or liquor licenses, correspondence, accounting records, bookkeeping entries, ledgers, corporate certificates, articles of incorporation, partnership agreements, payroll records, cancelled checks, money orders, certified checks, cashiers checks, promissory notes, records of cash transactions, copies of liquor license applications and other liquor license transactions, real estate appraisals, inventory appraisals, profit and loss statements, income statements pertaining to: Stephen F. Conroy, John T. Finley, Patrick C. Igo, Patrick M. McGibbon, and Alden D. Landreville, and Knight Kap Inc., Knight & Day, Inc. and Blackie Inc., doing business as Patrick's Lounge at 1318 Larpenteur Ave. St. Paul, Minnesota."

Given this extensive list of items to be seized, there is no way the police officers could be sure that they had found all of the items to be seized unless they searched every file in the attorney's office.

Even the most particular warrant cannot adequately safeguard client confidentiality, the attorney-client privilege, the attorney's work product, and the criminal defendant's constitutional right to counsel of all of the attorney's clients. It is unreasonable, in any case, to permit law enforcement officers to peruse miscellaneous documents in an attorney's office while attempting to locate documents listed in a search warrant. Even if it were possible to meet the particularity requirement regarding the place to be searched, the file would still contain some confidential information that is immune from seizure under the attorney-client privilege or the work product doctrine. Once that information is revealed to the police, the privileges are lost, and the information cannot be erased from the minds of the police. *Brown v. St. Paul Ry. Co.*, 241 Minn. 15, 31, 62 N.W.2d 688, 699 (1954).

It will not unreasonably burden prosecutors' offices and effective law enforcement to require officers to proceed by subpoena duces tecum in seeking documents held by an attorney. Attorneys are required by statute, the Code of Professional Responsibility, and the oath of admission to the bar to preserve and protect the judicial process. Thus, attorneys must respond faithfully and promptly, while still being allowed the opportunity to assert applicable privileges by a motion to quash. The very dearth of reported cases from other jurisdictions regarding the seizure by warrant of clients' files from an attorney's office indicates to us that the subpoena procedure is used elsewhere with satisfactory results. Subpoenas may be issued in conjunction with a grand jury proceeding or a hearing or trial before the court. Rules 22.01, 22.02, Rules of Criminal Procedure. Though this may be seen as limiting the ability of the police to obtain information in the early stages of an investigation, we find this measure necessary to protect the overriding interest of our society in preserving the attorney-client privilege, client confidentiality, the work product doctrine, and the constitutional right to counsel.

■ We are aware that the United States Supreme Court has held that a rule denying a search warrant for the premises of a third party and requiring a subpoena duces tecum was not constitutionally mandated. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). That case is distinguishable from the present case because the newspaper had announced a policy of destroying any evidence that might aid in the prosecution of protestors, while an attorney has an ethical obligation to the legal system and would be subject to discipline if he destroyed documents which had been subpoenaed. Moreover, there is no indication that the attorney in this case would have attempted to destroy the documents. A more important distinction between this case and *Zurcher* is that our decision rests not only on the Fourth Amendment of the United States Constitution, but also on Article I, section 10 of the Minnesota Constitution. The states may, as the United States Supreme Court has often recognized, afford their citizens greater protection than the safeguards guaranteed in the Federal Constitution. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Accord, *State v. Oman*, 261 Minn. 10, 21, 110 N.W.2d 514, 522 (1961). Indeed, the states are "independently responsible for safeguarding the rights of their citizens." *People v. Brisendine*, 13 Cal.3d 528, 551, 119 Cal.Rptr. 315, 330, 531 P.2d 1099, 1114 (1975).

■ We hold that a warrant authorizing the search of an attorney's office is unreasonable and, therefore, invalid when the attorney is not suspected of criminal wrongdoing and there is no threat that the documents sought will be destroyed. Since the county attorney and the court had no legal precedent or guidance with regard to such a search, their failure to use the subpoena process does not preclude them from obtaining these documents by use of a timely subpoena.

Writ of Prohibition granted.