Don LEVIN, Appellant,

v.

C.O.M.B. CO., Respondent.

Don LEVIN, Appellant,

v.

CVN COMPANIES, INC., Respondent.

No. C5–90–2232.

Court of Appeals of Minnesota.

May 7, 1991.

Review Denied July 24, 1991.

Gerald T. Laurie, Richard T. Thomson, Andrew E. Tanick, Lapp, Laurie, Libra, Abramson & Thomson, Chartered, Minneapolis, for appellant.

Steven C. Tourek, Robert S. Soskin, Gina M. Grothe Follen, Winthrop & Weinstine, St. Paul, for respondents.

Considered and decided by SHORT, P.J., and POPOVICH,\* and MULALLY,\*\* JJ.

## OPINION

SHORT, Presiding Judge.

This breach of contract action arose when Don Levin sued his employer, C.O. M.B. Co./CVN Companies, Inc., for unpaid commissions and wrongful discharge. During discovery, the trial court ruled that a letter from the company's outside counsel was protected by the attorney-client privilege and ordered Levin not to disclose, refer to, or use the letter. On appeal, Levin argues the trial court erred in suppressing the letter because it falls within the crime-fraud exception to the attorney-client privilege. We disagree and affirm.

## FACTS

Levin worked for the company from 1979 until 1988. He received mixed performance reviews ranging from good to very poor. In 1986, Levin filed a breach of

---

\* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

\*\* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

contract case against the company for over $2 million in unpaid commissions. By letter dated May of 1987, the company's outside counsel suggested that the company commence a declaratory judgment action to obtain court approval for discharging Levin and noted such an action might achieve an acceptable settlement in the unpaid commissions lawsuit. The attorney recommended "a scorched earth defense" against Levin's lawsuit. Finally, counsel wrote:

> Since it appears to me that we will, in all probability, be terminating Mr. Levin either with or without the benefit of Court protection, it is increasingly important that we document his poor work performance. Let's remember that such an approach will afford us the opportunity of manufacturing favorable evidence that we can use at the time of trial. As I suggested, I believe that memoranda to be generated now should "suggest" that the only reason we are keeping him on board is for the purpose of avoiding the filing of yet another frivolous and specious lawsuit. We will work with you in the development and maintenance of such documentation.

In January of 1988, a trial court granted summary judgment in favor of the company based on the statute of limitations. The company then fired Levin allegedly for cause. While we affirmed the trial court's grant of summary judgment, the supreme court reversed and remanded the case for trial. *See Levin v. C.O.M.B. Co.,* 441 N.W.2d 801, 805 (Minn.1989). In October of 1989, Levin commenced a second lawsuit against the company alleging wrongful discharge. Levin's two lawsuits have now been consolidated.

During the course of discovery, the company's former Director of Human Resources was deposed. Of significance, the former employee testified that:

(a) Levin's poor 1986 performance review was a true assessment of Levin's work;

(b) in the spring of 1987, company senior management, not outside counsel, decided to falsify Levin's performance so he could be fired for cause;

(c) a memorandum dated May 19, 1987, was the result of this company strategy;

(d) the former Director believed the company had wrongfully discharged him; and

(e) the former Director anonymously sent to Levin's attorney a confidential letter he had received in his capacity as Director of Human Resources from outside counsel.

The company brought a motion for a protective order seeking the return and suppression of all copies of the attorney's letter on the grounds of attorney-client privilege. At the hearing on this motion, the trial court ruled the attorney's use of the term "manufactured" was unwise, but the letter was not sent in furtherance of a fraud so as to defeat the privilege. By written order, the trial court prohibited Levin from disclosing, referring to, or using the letter. No findings of fact or memorandum accompanied the trial court's order. We granted Levin's petition for discretionary review.[1]

### ISSUE

Did the trial court abuse its discretion in concluding the letter did not fall within the crime-fraud exception to the attorney-client privilege?

### ANALYSIS

■ It is undisputed the letter at issue is an attorney-client communication. The only question before us is whether the document falls within the crime-fraud exception to that privilege. *See generally* Annotation, *Attorney–Client Privilege as Affected by Wrongful or Criminal Character of Contemplated Acts or Course of Conduct,* 125 A.L.R. 508 (1940). The absence of findings of fact or a memorandum

---

1. Although Levin's petition sought review of the trial court's entire order, the parties briefed and argued only the part relating to the attorney's letter. Consequently, we also confine our review to that part of the trial court's order.

by the trial court does not preclude our review. Where the issues have been decided by the trial court, "the reviewing court is not required to reverse simply because the trial court might have gone into more detail in the explanation of its findings." *Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn.1977). The trial court's ruling from the bench and subsequent written order sufficiently explain its conclusion that Levin failed to establish the letter fell within the crime-fraud exception.

■ To invoke the crime-fraud exception to the attorney-client privilege, Levin must establish a prima facie showing that the communication was (1) made in furtherance of a crime or fraud and (2) was closely related to the fraud.[2] *See Charles Woods Television Corp. v. Capital Cities/ABC, Inc.*, 869 F.2d 1155, 1161–62 (8th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 145, 107 L.Ed.2d 104 (1989). Application of the crime-fraud exception should not be based on a rigid analysis. *See Pritchard–Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 284 (8th Cir.1984), *cert. dismissed*, 472 U.S. 1022, 105 S.Ct. 3491, 87 L.Ed.2d 625 (1985). Instead, the focus should be on "whether the detriment to justice from foreclosing inquiry into pertinent facts is outweighed by the benefits to justice from a franker disclosure in the lawyer's office." *Id.* The guiding principle is whether the communication abused the attorney-client privilege, thus becoming unworthy of protection. *See Clark v. United States*, 289 U.S. 1, 16, 53 S.Ct. 465, 470, 77 L.Ed. 993 (1933). A trial court's decision regarding the applicability of the crime-fraud exception will not be overturned on appeal absent a clear abuse of discretion. *See Charles Woods*, 869 F.2d at 1161; *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir.1984).

### I.

■ The first issue before us is whether the attorney's letter was written to encourage the alleged falsification of Levin's employment records. Mere allegations of wrongdoing are insufficient to warrant application of the exception, *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir.1987), as are mere coincidences. *In re Grand Jury Subpoenas Duces Tecum*, 773 F.2d 204, 207 (8th Cir.1985).

■ Here, there is no evidence that outside counsel was present when the company allegedly decided to falsify Levin's performance records. Nor does the record suggest outside counsel even knew of the alleged conspiracy. While "manufacture" is a poor word choice, the term is ambiguous and hardly compels a finding of fraud. Instead, when the statement is read in context,[3] it is apparent the attorney was telling his client that documentation of Levin's poor performance would be necessary trial evidence, and was not advising the company to create false documents. The attorney was merely giving the standard advice to create a "paper trail." Absent any evidence stronger than an isolated ambiguous statement, the trial court could reasonably find that Levin has not established the communication was made to further a fraud on the court.

■ An innocent communication from a lawyer may still fall under the crime-fraud exception if the client is planning a fraud or crime. *See Clark*, 289 U.S. at 15, 53 S.Ct. at 469–70. As the trial court recognized, whether the company decided to falsify Levin's performance records is a closer question. Yet the record before us shows the trial court did not abuse its discretion by implicitly finding Levin failed

---

**2.** The supreme court has stated the attorney-client "privilege is not permitted to prevent disclosure of communications relating to commission of future crime or fraud." *Kahl v. Minnesota Wood Specialty, Inc.*, 277 N.W.2d 395, 399 (1979). However, as the supreme court acknowledged, these observations were only dicta because the crime-fraud exception was not at issue in the case. *Id.*

**3.** We are troubled by the "scorched earth" strategy outlined in the letter. However, evidentiary privileges exist apart from ethical considerations. *See United States v. Ballard*, 779 F.2d 287, 293 (5th Cir.1986), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). We do not decide whether Rule 11 or other ethical violations may have been committed. Thus, the opinion of Levin's expert on the applicability of the crime-fraud exception is not controlling.

to make a prima facie case of fraud at the motion hearing. The conclusory affidavits of Levin and the former Director of Marketing merely allege a conspiracy against Levin. The former Director of Human Resources contradicted these affidavits in part by testifying Levin's 1986 performance review not only was accurate, but also was prepared before the alleged conspiracy began. Thus, the only uncontradicted evidence in the record of the company's efforts to create false documents is the former Director of Human Resources' testimony that he told Levin's supervisor to review Levin's good work negatively. A reasonable person could evaluate this evidence in light of the Director's belief that he himself had been wrongfully discharged and of his intentional disclosure of a confidential company document to Levin's attorney.[4] In addition, the former Director specifically admitted he never signed any false reports regarding Levin's work. Given these facts, we cannot say the trial court abused its discretion in deciding Levin failed to establish a prima facie case that a conspiracy existed to falsify Levin's records. *See Grand Jury Subpoenas*, 773 F.2d at 207 (trial court did not abuse discretion by refusing to infer existence of fraud from speculative evidence).

## II.

■ Even if Levin established that the attorney's letter furthered the alleged fraud, the attorney's advice still is not admissible under the crime-fraud exception "because the relationship between the fraud alleged and the communications does not justify piercing the privilege." *Pritchard–Keang*, 751 F.2d at 283. While the timing of the letter outlining the company's strategy suggests the circumstantial inference of a relationship, Levin presented no evidence that the alleged falsification was prompted by the lawyer's communication,

that the attorney's communication was understood as suggesting the alleged fraud, or that any other relationship existed. The trial court did not abuse its discretion in concluding Levin's evidence was insufficient to show a close relationship between the alleged fraud and the communication. *See Charles Woods*, 869 F.2d at 1161–62 (crime-fraud exception inapplicable if communication does not bear a close relationship to the fraud); *Grand Jury Subpoenas*, 773 F.2d at 207 (mere coincidences insufficient to warrant application of crime-fraud exception).

## III.

The trial court's decision reflects an appropriate balancing of benefits and detrimental effects. The benefits rendered to justice by suppressing the letter far outweigh the detrimental effects. *See Pritchard–Keang*, 751 F.2d at 284. If this letter were admissible, other litigants easily could discover privileged attorney-client communications whenever disgruntled former employees or witnesses merely allege the existence of a conspiracy remotely related to the communications. Avoiding the chilling effect this threat of widespread disclosure would have on frank communication between lawyers and clients far outweighs the damage resulting from the suppression of a single letter. *See United States v. Zolin*, 491 U.S. 554, 560–63, 109 S.Ct. 2619, 2625–26, 105 L.Ed.2d 469 (1989) (full and frank communication between lawyers and clients promotes the broad public interest in the observance of law and the administration of justice). Moreover, as the trial court recognized, excluding the letter does not inhibit inquiry into the company's potentially fraudulent acts. *See Pritchard–Keang*, 751 F.2d at 284 (denying production of report did not limit inquiry into facts underlying report). As Levin has several

---

**4.** The former employee did not waive the company's attorney-client privilege by sending the letter to Levin because former employees cannot act for a corporation. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985) (displaced manager has no control over corporation's attorney-client privilege). Fur-

ther, the company's delay in objecting to use of the letter did not waive the privilege given the former employee's surreptitious actions. *Cf. Schwartz v. Wenger*, 267 Minn. 40, 43, 124 N.W.2d 489, 492 (1963) (privilege waived when third person overhears confidential communications as long as eavesdropping is not surreptitious).

witnesses to call at trial to establish whether the company actually manufactured evidence, he hardly needs a few ambiguous sentences from the attorney's letter to buttress his case. Under these circumstances, the trial court did not abuse its discretion by ruling the letter did not fall within the crime-fraud exception to the attorney-client privilege.

### DECISION

The trial court did not abuse its discretion in finding privileged statements between an attorney and a client were not admissible under the crime-fraud exception to the attorney-client privilege when the party seeking introduction of the statements failed to make a prima facie showing of fraud or show that the communications were closely related to the fraud.

Affirmed.