**KLITZMAN, KLITZMAN & GALLAGHER, Plaintiff,**

v.

**Robert J. KRUT, Vernon Holmes, W. Hunt Dumont, and Michael M. Milner, Defendants.**

**Civ. A. No. 84–2180.**

United States District Court, D. New Jersey.

June 25, 1984.

Judgment affirmed, 3rd Cir., —— F.2d ——.

11. See Rule 8(a) of the Rules following 28 U.S.C. § 2254.

DeCotiis & Philips by Alfred C. DeCotiis, West Orange, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty., by Paul J. Dillon, Asst. U.S. Atty., Newark, N.J., for defendants.

## OPINION

SAROKIN, District Judge.

This action is before the court on the return date of an order to show cause why a preliminary injunction should not issue, which order, including temporary restraints, was issued by the court on June 5, 1984. At issue is the propriety of the government's search of plaintiff's law offices and the seizure of 2000 client files and numerous financial documents, all pursuant to three separate search warrants. Plaintiff seeks the return of the documents

seized, as well as damages for violations of its constitutional rights.

FACTS

As part of a pending grand jury investigation into allegations of a conspiracy to defraud insurance companies by submitting false medical reports and fraudulently inflated medical bills, on May 16, 1984, United States Postal Inspectors searched the law offices of Klitzman, Klitzman & Gallagher in Asbury Park, New Jersey. Initially, such search was accomplished pursuant to a warrant issued on May 14, 1984 by Honorable Robert E. Cowen, United States Magistrate. The warrant authorized the seizure of

> certain business records, books and other documents which are case registers, legal diaries, telephone message books and pads, visitor's logs, telephone toll records, business bank accounts, any and all records of all deposits in and withdrawals from all bank accounts pertaining to the practice of law by Charles B. Klitzman, any and all ledger books or other records concerning trust clients and trustee accounts, all retainer and compensation agreements with personal injury clients, all records pertaining to the disbursement of funds on behalf of personal injury clients, all records reflecting payments to attorneys, investigators and others, all closed or nonactive files for personal injury claimants containing reports and bills for professional services allegedly performed by physicians and other medical practitioners and any correspondence and other records and documents associated with the preparation and presentation of these claims, and any other evidence, instrumentalities and fruits of the crimes of conspiracy to devise and execute a scheme to defraud insurance companies through the submission of fraudulent medical claims and the use of the mails in executing said scheme in violation of Title 18, United States Code, Sections 371 and 1341.

Aff. of Robert J. Krut, Exh. A. Such warrant was based upon an affidavit of defendant Krut detailing particular exam-

ples of false or inflated medical bills submitted on behalf of plaintiff's clients. For example, the supporting affidavit reads:

> ... a former client represented by Charles B. Klitzman stated that he was never treated by Alan Lederman. A review of the insurance company file reveals that on December 8, 1980, a bill for medical services prepared on the stationery of Alan Lederman, D.C. d/b/a Matawan Chiropractic Center reporting that his client/patient had been treated forty-six times, was mailed from the Klitzman law firm to the Royal Globe Insurance Company, Shrewsbury, New Jersey.

Krut Aff., Exh. A (Rider ¶ 9).

During the course of the search, it became necessary to obtain two additional warrants. *See* Aff. of Michael Milner, ¶¶ 8–10. Both were based on the affidavits of Postal Inspector Vernon Holmes, a defendant herein, who was in telephonic contact with defendant Krut, himself a participant in the search. The first of these warrants extended the scope of the search to

> personal injury files of the Klitzman law firm presently pending payment from insurance companies in which releases have been executed and submitted to the insurance company for which payment has not yet been disbursed to the client ...

Krut. Aff., Exh. B. Hence, open files could now be searched. Krut, however, seems to state that such files were only cursorily examined. Krut Aff. ¶ 15. The second additional warrant further extended the scope of the search to include plaintiff's storage room, "located in an alley" behind the premises already searched. This search became necessary when, based upon information provided by one of plaintiff's employees, investigators realized that certain of the closed files in which they were interested were contained in such storage room. Krut Aff., Exhibit C.

As a result of this search, a full-day occupation of plaintiff's offices occurred on May 16, 1984. Aff. of Abraham R. Klitzman (6/5/84) ¶¶ 2–4. The office was

closed, and over 2000 files seized. Plaintiff alleges that the search and seizure exceeded the scope of the warrant and paints a picture of "a wholesale rummaging of all the files and other documents in the office," Klitzman Aff. ¶ 2, *see also* Klitzman Aff. (6/14/84) ¶ 11, including personal records. Klitzman Aff. (6/5/84) ¶ 7. The government, however, contends that plaintiffs agreed to cooperate in the search, Krut Aff. ¶ 9, and that, in fact, the government relied upon the representations of plaintiff's bookkeeper in deciding which documents were covered by the first search warrant. *Id.* ¶ 14. It states that plaintiff made the decision to close its own offices, *id.* ¶ 13, and portrays the actions of government agents as reasonable throughout. *Id.* ¶¶ 14, 19, 21, 23.

Plaintiff now moves for a preliminary injunction, arguing that the search here at issue was unreasonable under the circumstances, as well as *per se* unreasonable as a result of its violation of the attorney-client relationship. It also argues that the scope of the search was unconstitutionally broad and that, in undertaking it, the government violated certain of its own regulations. The government both disputes these claims and moves to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

DISCUSSION

> The prospect of a law office search is a matter of serious concern because of the threat it poses to the nature of the attorney-client relationship, the legal devices that have evolved to promote and foster it, and the attorney's role in the administration of justice.

Bloom, *The Law Office Search: An Emerging Problem and Some Suggested Solutions,* 69 Geo.L.J. 1, 12 (1980). For these reasons, grounded in both constitutional law and common law privilege, the court must scrutinize the claims set forth by plaintiff with all the care demanded by such a "difficult and delicate issue." *O'Connor v. Johnson,* 287 N.W.2d 400, 402 (Minn.1979). Those claims are indeed serious ones. Defendants oppose them arguing first that they should be dismissed and second that, in any event, the relief requested is not warranted. These issues will be discussed below, *seriatim.*

A. *Motions to Dismiss*

Plaintiff's complaint includes three counts. The first claims a violation of its fourth amendment rights, the second, a violation of the Equal Protection clause, brought pursuant to 42 U.S.C. § 1985(3), and the third, a violation by defendants Dumont, the United States Attorney for the District of New Jersey, and Milner, an Assistant United States Attorney in this district, who allegedly neglected to prevent a search and seizure which they knew to be unlawful, in violation of 42 U.S.C. § 1986. Defendant moves to dismiss each of these claims. First, defendants argue that the allegations of Counts II and III fail to state a claim upon which relief can be granted, and that, in any event, no facts are stated constituting any claim against defendants Holmes and Dumont. Second, defendants argue that they are either absolutely or qualifiedly immune from suit, and that Count I should be dismissed for this reason.

■ Defendants are correct that plaintiff fails to state a claim under 42 U.S.C. § 1985(3). That provision prohibits, in pertinent part, a conspiracy to "go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." However, it has been interpreted to address not all conspiracies to violate one's constitutional rights, but only those in which there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnotes omitted). *See also Scott v. Rosenberg,* 702 F.2d 1263, 1269–70 (9th Cir.1983); *Rogin v. Bensalem Town-*

*ship,* 616 F.2d 680, 696 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Hauptmann v. Wilentz,* 570 F.Supp. 351, 385–86 (D.N.J.1983); *Mastrota v. Robinson,* 534 F.Supp. 434, 437 n. 3 (E.D.Pa.1982) (Becker, J.) (even if prisoner deprived of his rights, a violation is not stated under § 1985(3) unless a class-based animus alleged). Here, no racial or other class-based effect whatsoever, let alone intentional discrimination, is alleged; no violation of the equal protection clause appears anywhere in the complaint. For this reason, Count II of plaintiff's complaint must be dismissed. Similarly, Count III, alleging a violation of 42 U.S.C. § 1986, must be dismissed. As the Court of Appeals for the Third Circuit has stated:

> Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution. Because transgressions of § 1986 by definition depend on a pre-existing violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.

*Rogin, supra,* 616 F.2d at 696 (footnotes omitted). As plaintiff fails to state a claim in Count II, Count III must also be dismissed.

■ Count I, alleging a violation of plaintiff's fourth amendment rights by four federal officials, remains. Defendants Dumont and Holmes first move to dismiss this Count as against them, based upon their minimal involvement in the search and seizure at issue. The government argues that

> The Complaint does *not* allege that Holmes took any part in the search conducted on May 16, 1984. The Complaint does *not* allege that Holmes prepared or was responsible for the language of the search warrants that it conclusively asserts were illegal. The Complaint does *not* even allege that Holmes lied in the two affidavits he submitted on May 16, 1984 ... to the U.S. Magistrate. In

> short, interpreted in the light most favorable to plaintiffs, the Complaint does not allege any wrongdoing by Holmes ...

Government's Brief at 4 (emphasis in original). The court agrees with defendant Holmes that the part he played in the alleged deprivation of plaintiff's rights appears to be a relatively minor one. Nonetheless, the complaint states that Holmes "was the affiant for the two search warrants issued on May 16, 1984." Complaint ¶ 8. That he did not personally search and seize plaintiff's files, and that plaintiff fails to allege either that Holmes was responsible for the language of the affidavits, or lied in them, do not however exonerate Holmes. The government does not contend that Holmes did not participate in the alleged violation of plaintiff's rights, by swearing to the contents of affidavits in support of two search warrants underlying such violation. However, even though Holmes did not participate in the search directly and even if he neither authored the words of the affidavit himself, *see* Krut Aff. ¶ 26, nor lied in the affidavit, Holmes' uncontroverted participation in the allegedly unconstitutional events of May 16, 1984 means that the court cannot, as a matter of law, hold that he cannot be held at least partially liable for the violation alleged. *See Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979) (liability under § 1983 possible for acts committed in obtaining warrants). *See generally Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 395–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619 (1971). The existence and extent of that liability, of course, remain a matter for trial. Holmes' motion to dismiss for insufficient factual allegations is denied.

■ Nor may such motion be granted as against defendant Dumont. The complaint names Dumont, stating that he

> ... is the United States Attorney for the District of New Jersey and in that capacity exercised his authority over and is responsible for the assisting United States Attorneys in their investigation and prosecution of criminal cases.

Complaint ¶ 9. Though the complaint does not allege specific conduct on the part of defendant Dumont which would render him liable herein, the government admits that Dumont was informed of the search here in question prior to its execution. Milner Aff. ¶ 6. If plaintiff can thus make out a *Bivens*-type claim by proving, for example, the illegality of the search, it may also be able to prove Dumont's liability, for although, as the government argues, such liability may not ordinarily be predicated on a theory of *respondeat superior*, *see*, *e.g.*, *Tarpley v. Greene*, 684 F.2d 1, 9–10 (D.C. Cir.1982), citing *Monell v. New York Department of Social Services*, 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 2036, 2037, 56 L.Ed.2d 611 (1978), it may rest upon Dumont's "deliberate indifference or ... tacit authorization of the offensive acts." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Dumont is here alleged to have approved the search and seizure at issue, a proposition supported by the government's submissions. This would certainly comprise sufficient involvement upon which to base liability. *See*, *e.g.*, *Hays v. Jefferson County*, *Ky.*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). Nor absent authorization, can the court say, as a matter of law, that plaintiff will not be able to prove Dumont's negligence, or recklessness in the supervision of his subordinates, also a basis for liability in civil rights cases. *See*, *e.g.*, *Lenard v. Argento*, 699 F.2d 874, 885–86 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983), quoting *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Finally, Dumont may be proved to have ratified the acts of his subordinates, thereby subjecting himself to liability. *See*, *e.g.*, *Turpin v. Mailet*, *supra*, 619 F.2d at 200. *Cf.*, *Bowen v. Watkins*, 669 F.2d 979, 988–89 (5th Cir.1982) (more than mere ratification required when

ratification based upon "independent legitimate reasons"). Hence, especially in light of the court's limited power to dismiss "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), Dumont's motion to dismiss on these grounds must also be denied.

The government additionally contends, however, that the individual defendants herein are immune from suit.[1] With respect to defendants Dumont and Milner this raises the oft-addressed but essentially unresolved question of the extent of the immunity to be accorded prosecutors. The Supreme Court has held "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages ..." *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). The Court, however, was careful to limit the scope of absolute immunity to "activities ... intimately associated with the judicial phase of the criminal process, and thus ... functions to which the reasons for absolute immunity apply with full force." *Id.* at 430, 96 S.Ct. at 995. It left open the extent of immunity appropriate with respect to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate," *id.* at 430–31, 96 S.Ct. at 995–96, while recognizing

> that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment

1. The government makes this argument only on behalf of defendants Milner and Krut, perhaps reflecting undue optimism with respect to the disposition of the motions discussed, *supra*.

The court will, however, treat the immunity defense as though argued on behalf of all defendants.

against particular defendants, which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them.

*Id.* at 431 n. 33, 96 S.Ct. at 995 n. 33. The Court thus left such line-drawing to the lower courts, admonishing them to utilize a "functional" approach. *Id.* at 430, 96 S.Ct. at 995. Thus, in *Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir.1976), the Third Circuit held that an Assistant United States Attorney was absolutely shielded from allegations that he knowingly used false and perjured testimony, which allegations clearly went to the presentation of a case. *See also Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir.1981). In *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir.1977) (*per curiam*), however, the court held that allegations of deliberate leaks of false information by the United States did not fall within the ambit of the absolute immunity discussed in *Imbler*.

■ The Third Circuit has admitted of greater difficulty in addressing the "gray area" of investigative activity preceding a prosecution. Thus, in *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981), the court stated

We recognize that the decision of … a prosecuting attorney is not made in a vacuum. On occasion, the securing of additional information may be necessary before an informed decision can be made. To grant a prosecuting attorney absolute immunity over his decision to initiate a prosecution while subjecting him to liability for securing the information necessary to make that decision would only foster uninformed decision-making and the potential for needless actions. We believe that the right to make the deci-

sions without being subject to suit must include some limited right to gather the necessary information. At the same time, we are sensitive to the possibility that this narrow exception could be distorted to include all of the prosecutor's investigative activities. We hold only that to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded to the decision itself.

The *Forsyth* court, and those that have followed it, have thus focused on the distinction between a prosecutor's quasi-judicial functions, for which he or she is afforded absolute immunity, and his or her administrative or investigative functions, for which only a qualified immunity is appropriate. *Id.* at 1215. *See also Mancini v. Lester*, 630 F.2d 990, 992–94 (3d Cir.1980) (citing cases). The result of these decisions is that "a limited factual inquiry may be necessary to determine in what role the challenged function was exercised." *Forsyth, supra,* 599 F.2d at 1215, *Mancini, supra,* 630 F.2d at 993–94. *See also Forsyth v. Kleindienst*, 551 F.Supp. 1247, 1251–53 (E.D.Pa.1982) (on remand), *aff'd,* 729 F.2d 267, at 268–274 (3d Cir.1984).

■ Application of these standards renders such a hearing necessary in this case. Although the courts that have considered the matter have generally found that a prosecutor is not accorded absolute immunity for actions such as those alleged here, *see, e.g., J.D. Pflaumer, Inc. v. U.S. Dept. of Justice*, 450 F.Supp. 1125, 1133–35 (E.D. Pa.1978); *Lofland v. Meyers*, 442 F.Supp. 955, 958 (S.D.N.Y.1977), *Forsyth* mandates a more detailed inquiry. Thus, it is necessary for the court to examine whether the information seized was to be used in deciding whether or not to prosecute—and not merely to gather evidence in support of a prosecution already decided upon. To this end, *Forsyth* contemplates that the information seized must be "*necessary* to [the] decision to initiate a criminal prosecution" (emphasis added) in order for absolute im-

munity to exist, and not information additional to that which would already support a prosecution. The right to gather the necessary information, *Forsyth* reminds us, is a limited one. For the purposes of holding the necessary hearing, the matter of the immunity accorded defendants Dumont and Milner is hereby referred to the magistrate for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and General Rule 40(A)(11)(iii) of the United States District Court for the District of New Jersey.

 Such hearing is necessary because the court cannot say, as a matter of law, that defendants' qualified immunity, to which they are entitled as public officials, mandates dismissal. The Supreme Court has held that they "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[2] If plaintiffs are correct that the warrant here at issue was overbroad, that the search exceeded the scope of the warrant and that the attorney-client privilege was violated by such search, then clearly established rights will have been violated. That the propriety, *per se,* of searches of law offices is an area of some controversy makes it more, not less, imperative that public officials not disregard the strictures of the fourth amendment. Nor given the Supreme Court's abandonment in *Harlow* of the subjective test of good faith, is the magistrate's approval of the warrants at issue necessarily dispositive, as in the pre-*Harlow* cases cited by defendants. *Harlow* requires the court to look not to the clarity of the *violation* allegedly perpetrated, but at the clarity of the *law* at issue. *Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, at 909–910 (3d Cir.1984). *Czurlanis v. Albanese,* 721 F.2d 98, 108 (3d Cir.1983); *Hauptmann v. Wilentz, supra,* 570 F.Supp. at 370–71; *Ingenito v. New Jersey Dept. of Corrections,* 568 F.Supp. 946, 951 (D.C.N.J.1983). As plaintiff argues, the fourth amendment principles here implicated are basic ones, about which defendants clearly knew or should have known. *See Losch, supra,* at 910 (a police officer is ordinarily charged to know the probable cause requirement), citing *Trejo v. Perez,* 693 F.2d 482, 488 n. 10 (5th Cir. 1982). Absent a claim by defendants that they did not know the law at issue, therefore, their motion to dismiss on grounds of qualified immunity must be denied. *See generally Harlow, supra,* 457 U.S. at 819, 102 S.Ct. at 2739 (official bears the burden of proving "that he neither knew nor should have known of the relevant legal standard); *Losch, supra,* at 909 (same).

### B. *Preliminary Relief*

 The government argues that plaintiff's application for injunctive relief, *see* Prayer for Relief ¶ (c), is addressed by Federal Rule of Criminal Procedure 41(e). That rule states

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Defendants first argue that plaintiffs lack standing to assert a claim under Rule 41(e). Indeed, the Third Circuit has recently expressed "doubt as to [one's] standing to present a preindictment motion to suppress evidence." *United States v. Furina,* 707 F.2d 82, 83 n. 4 (3d Cir.1983), citing *In re*

---

**2.** *Harlow* abolished the subjective test of defendants' good faith in assessing the validity of a qualified immunity defense. 457 U.S. at 815–18, 102 S.Ct. at 2737–39.

*Grand Jury Proceedings, Harrisburg, Pa.,* 450 F.2d 199 (3d Cir.1971) (*in banc*), *aff'd,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). However, the court finds the matter much less problematic with respect to the return of property, the relief primarily sought by plaintiff. *See* Plaintiff's Reply Letter Memorandum at 2. *In re Grand Jury Proceedings, supra,* 450 F.2d at 228 (Gibbons, J., dissenting), citing *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931). *See also G.M. Leasing Corp. v. United States,* 429 U.S. 338, 359–60, 97 S.Ct. 619, 632–33, 50 L.Ed.2d 530 (1977), citing *Hunsucker v. Phinney,* 497 F.2d 29, 34 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). Where, as here, plaintiff institutes an independent action for such return, there is no question but that courts may utilize their equitable power to order pre-indictment relief. *See, e.g., Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15, 16–17 (7th Cir. 1978); *Richey v. Smith,* 515 F.2d 1239, 1243–44 (5th Cir.1975); *Lowrie v. United States,* 558 F.Supp. 1029, 1032 (D.Colo. 1983) (citing cases). *See generally* C. Wright 3 *Federal Practice and Procedure* § 673 at 764–65 (1982). This is especially so given the clear language of the rule, as amended in 1972: by specifying that if a motion for return of property "comes on for hearing ... after an indictment or information, it shall be treated also as a motion to suppress ...," the rule seems to contemplate other treatment for such motion if made pre-indictment.[3]

■ Nonetheless, the action filed here requires the plaintiff to show (1) that it is entitled to lawful possession of the property and (2) that such property has been illegally seized. Moreover, courts have required that parties seeking such relief show irreparable harm, *see, e.g., Hunsucker v. Phinney, supra,* 497 F.2d at 34, no adequate remedy at law, *see, e.g., Marshall v. Central Mine Equipment Co.,* 608 F.2d 719, 721 (8th Cir.1979), and a favorable balancing of the equities. *See, e.g., Shea v.*

*Gabriel,* 520 F.2d 879, 882 (1st Cir.1975) (balancing government's interest in protecting secrecy of investigation against movant's temporary loss or property). *See also United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297, 1302–03 (3d Cir.1978) (return mandated where government has unreasonably delayed in bringing prosecution). In general, then, courts exercise their "anomalous jurisdiction" over matters such as these with great caution and restraint. *See, e.g., Pieper v. United States,* 604 F.2d 1131, 1133 (8th Cir.1979) (preindictment motion to suppress); *Meier v. Keller,* 521 F.2d 548, 554 (9th Cir.1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976); *Application of Campola,* 543 F.Supp. 115, 117 (N.D.N.Y.1982).

Plaintiff attacks the warrants here at issue on three main grounds. First, it alleges that probable cause was lacking for as broad a search as was authorized. Second, it argues that the warrants were not sufficiently specific to satisfy the "particularity" requirement of the fourth amendment, and that they were overbroad. And third, it contends that the search of a law office is *per se* unreasonable and ought not be allowed. Plaintiff adds that, in searching the law office, the government disobeyed its own regulations, and hence, the evidence thus seized ought to be returned and, later, suppressed.

■ The court has no doubt but that probable cause existed for a search of plaintiff's offices. Probable cause, of course, is a "practical, nontechnical conception. In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Here, the affidavit of defendant

---

**3.** The legislative history on this point is, however, unavailing. It should be noted that this amendment post-dated the Third Circuit's decision in *In re Grand Jury Proceedings, supra.*

Krut set forth numerous instances of fraud linked to plaintiff's clients. Common sense indicated a pattern of such activity, not limited to the twenty-nine clients named, by way of example, in Krut's affidavit. Probable cause thus existed to believe that a federal crime had been committed. Given this finding of probable cause, it does not strain logic in the least to find that plaintiff's offices may have been "the place of concealment of evidence of the crime." *Zurcher v. Stanford Daily*, 436 U.S. 547, 558, 98 S.Ct. 1970, 1977, 56 L.Ed.2d 525 (1978), even though the events described in Krut's affidavit in support of the warrant occurred some time before the search. N.J.Court R. 1:21–6(b) (requiring attorneys to maintain certain records for seven years). *See also Andresen v. Maryland*, 427 U.S. 463, 478–79 n. 9, 96 S.Ct. 2737, 2747–48 n. 9, 49 L.Ed.2d 627 (1976); *United States v. Forsythe*, 560 F.2d 1127, 1132 and n. 6 (3d Cir.1977). *Cf., United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983) (large scale drug operation). This conclusion garners additional support from the fact that Magistrate Cowen found such probable cause to exist, a determination entitled to "great deference by reviewing courts." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), citing *Jones v. United States*, 362 U.S. 257, 270–71, 80 S.Ct. 725, 735–36, 4 L.Ed.2d 697 (1960). *See also Illinois v. Gates, supra*, 103 S.Ct. at 2331; *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

▮ Nor does the court believe that the fact that the search here conducted occurred within a law office is dispositive. To be sure, the potential for undermining the attorney-client privilege and work product doctrine, and thereby chilling communication between lawyer and client and hampering trial preparation are serious considerations, all the more so for the implications they have for the constitutional right to effective assistance of counsel. *See generally Bloom, supra*, 69 Geo.L.J. at 18–24. *See also* Note, *The Assault on the Citadel of Privilege Proceeds Apace: The Unreasonableness of Law Office Searches*, 49 Fordham L.Rev. 708 (1981). However, as plaintiff concedes, this does not immunize a law office from search, but rather affects the scrutiny that ought to be paid to the "particularity and breadth of the warrant, and the scope and nature of the search and resulting seizures." Plaintiff's Brief at 12. Indeed, notwithstanding the problems inherent in a search such as this, courts have consistently upheld searches of law offices where, as here, the attorney at issue was himself the target of criminal investigation. *See, e.g., Andresen v. Maryland, supra* (1976); *Application of the United States for an Order*, 723 F.2d 1022 (1st Cir.1983); *National City Trading Corp. v. United States*, 635 F.2d 1020 (2d Cir.1980); *In re Grand Jury Investigation*, 631 F.2d 17 (3d Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *United States v. Medows*, 540 F.Supp. 490, 498–99 n. 35 (S.D.N.Y.1982). *Cf., People v. Hearty*, 644 P.2d 302, 312–14 (Colo.1982) (attorney not suspected of crime; evidence seized from attorney's office suppressed); *Deukmejian v. Superior Court for the County of Los Angeles*, 103 Cal.App.3d 253, 162 Cal.Rptr. 857 (Ct.App.1980) (rejecting *per se* rule against law office search in light of California statute, which applies only to third parties not suspected of criminal activity); *O'Connor v. Johnson, supra*, 287 N.W.2d at 405 (*per se* rule against law office searches when attorney is not suspected of criminal wrongdoing). Courts have justified the resulting infringement on attorney-client privilege by, for example, noting the exceptions to the privilege where illegal activity, *Application of the United States for an Order, supra*, 723 F.2d at 1026, citing *United States v. Hoffa*, 349 F.2d 20, 37 (6th Cir.1965), *aff'd*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), or fee arrangements, *In re Grand Jury Investigation, supra*, 631 F.2d at 19; *see also In re Grand Jury Witness*, 695 F.2d 359, 361–62 (9th Cir.1982), are involved. Taken together, these cases constitute persuasive precedent against a *per se* rule prohibiting law office searches. The important interests to the contrary notwith-

standing, the court nonetheless hesitates to pronounce a rule which would have the effect of insulating lawyers from scrutiny by law enforcement personnel in all circumstances. It would be inappropriate to place lawyers above the law or to treat them differently from all other citizens. The attorney-client relationship impels caution, but does not immunize lawyers where criminal activity on their part is suspected.

■■■ Such interests do not, however, justify the search here conducted. Although the government contends that the search was properly limited "to closed personal injury files which contained reports and bills for professional services by medical practitioners, and other records associated with the preparation and presentation of closed personal injury claims," the court cannot agree. Indeed, the warrant, while sufficiently particular so that little or "nothing is left to the discretion of the officer executing the warrant," *Andresen, supra,* 427 U.S. at 480, 96 S.Ct. at 2748, citing *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965), nonetheless allows for the search through and seizure of much more than was reasonably necessary in light of the important interests at stake. The warrant encompasses all of Charles Klitzman's law practice, irrespective of its relationship to the underlying fraud scheme, and irrespective of whether the cases to be searched are open or closed. It allows the seizure of many financial records which, even if not privileged, cannot by the underlying affidavit be regarded as necessary or even relevant to proving such scheme. *See* Klitzman Aff. (6/14/84) ¶ 10. It allows the seizure of all file lists and appointment books, irrespective of their relationship to the particular crimes here alleged, or to personal injury cases in general.[4] *Id.* ¶ 9. And it requires the impoundment of all closed personal injury files, without making any effort to limit them as to doctors involved,

types of personal injury claims at issue, or other indicia which would protect the privacy interests of innocent lawyers and clients.

The attorney-client privilege, and the concerns which underlie it, demand more. Indeed, in other cases, applicable by analogy, Congress itself demands more. Thus, 42 U.S.C. § 2000aa–11, and the regulations promulgated pursuant thereto, while specifically applicable only to efforts by federal law enforcement officials "to obtain documentary materials in the private possession of a person when the person is not reasonably believed to be a suspect in such offense ...." 42 U.S.C. § 2000aa–11(a), also demands generally

> a recognition of special concern for privacy interests in cases in which a search or seizure for such documents would intrude upon a known confidential relationship such as that which may exist between clergyman and parishioner; lawyer and client; or doctor and patient ...

42 U.S.C. § 2000aa–11(a)(3). *See also* 28 C.F.R. §§ 59.1(a), 59.4(b)(1). Furthermore, to the extent that the search and seizure here at issue included within its scope materials emanating from confidential relationships between lawyers not suspected of criminal activity and their clients, it was covered by these regulations. Hence, it should have been authorized by "an appropriate Deputy Attorney General," 28 C.F.R. § 59.4(b)(2), and minimized wherever possible. 28 C.F.R. §§ 59.4(b)(1)(i), 59.4(b)(4), 59.4(c). The former appears not to have occurred; the latter certainly did not.

■■■ Plaintiff's entitlement to possession of the materials seized being unquestionable, *see United States v. One Residence and Attached Garage,* 603 F.2d 1231, 1234 (7th Cir.1979); *cf., Sovereign News Co. v. United States,* 690 F.2d 569, 577 (6th Cir.1982), *cert. denied,* ── U.S. ──, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983)

---

**4.** It is true that, as defendants argue, it is impossible to seize lists such as these in part only. That argument militates against any seizure at all where, as here, important countervailing interests are at stake. Moreover, a more discern-

ing search, though perhaps more intrusive as such, would have engendered a less harmful and extensive seizure and thus make less necessary the relief here sought.

(business records returned post-trial), and the court having found the search and seizure overbroad and therefore illegal, the question thus becomes the appropriateness of the equitable relief sought by plaintiff. No adequate remedy at law appearing on the horizon, *cf., Marshall, supra,* 608 F.2d at 721, the issue is reduced to one of irreparable harm and a balancing of the equities. The court finds these considerations to mandate the return of the materials seized from plaintiff's offices. A law office's files, telephone logs and financial records are its lifeline: without them, normal operations cannot but be significantly curtailed. Even closed files, full of completed forms, briefs, and medical references—a firm's own precedents—are important to day-to-day operations and certainly contain materials of a confidential nature. Nor does a three-week delay in moving to have them returned necessarily demonstrate the lack of irreparable harm from a *continuing* absence of the documents around which a practice is built. A return of specified documents, even if the government were to grant it, as plaintiff claims it has not, *see* Klitzman Aff. (6/14/84) ¶ 11, is insufficient relief where, as here, the number of documents seized is so large that identification of specific items becomes difficult. And, the equities, in light of the privacy interests of innocent clients and lawyers at stake [5] and the important concerns underlying the protection of those interests, here justify overriding the government's interest in unimpeded investigation.

For all of these reasons, plaintiff's application for preliminary relief in the form of a return of the documents seized on May 16, 1984 from its law offices is granted. Upon the return of such documents, plaintiff, of course, shall be under a continuing duty to maintain them in their present condition.[6]

 Finally, the court recognizes that there is a considerable risk that to permit an action such as this to remain pending during a criminal investigation may have a chilling effect upon the prosecution in this and other matters. It may also interfere with the actual work of the prosecution in such matters, since it will erode its time and energy. However, if it is true that the constitutional rights of the plaintiffs have been violated, then a chilling of the prosecution is in order. As to the second consideration, however, so as not to interfere with the criminal investigation and the presentation to the grand jury, as well as the trial, if any, of the pending criminal matter, all further proceedings in the present civil action, including discovery, shall be stayed until the criminal proceeding is concluded.[7]

An appropriate order shall issue.

---

5. As in all proceedings in which preliminary injunctive relief is sought, the court must here take into account the possibility of harm to other interested parties, here plaintiff's clients. *See, e.g., In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982). Moreover, at least to the extent that plaintiffs set forth the work product doctrine as one ground for return of the documents seized, they are certainly entitled to raise it, both on their behalf and on behalf of their clients. *Appeal of Hughes,* 633 F.2d 282, 285–86 (3d Cir.1980). *See generally United States v. Nobles,* 422 U.S. 225, 236–40, 95 S.Ct. 2160, 2169–71, 45 L.Ed.2d 141 (1975), citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). And, of course, it is "universally accepted that the attorney-client privilege may be raised by the attorney." *Fisher v. United States,* 425 U.S. 391, 402 n. 6, 96 S.Ct. 1569, 1576 n. 6, 48 L.Ed.2d 39 (citing authorities).

6. Indeed, the court anticipates that it will not be long before these documents are subpoenaed by the grand jury. In this sense, the court's action vindicates the "subpoena preference rule" for situations such as these. *See Bloom, supra,* 69 Geo.L.J. at 25–54; 28 C.F.R. § 59.1(b). *But see Zurcher, supra,* 436 U.S. at 560–63, 98 S.Ct. at 1978–80. At that time, plaintiffs will be able to move to quash such subpoenas for particular materials sought. At this point, however, the court finds the search conducted so overbroad, or at least overbroad in such a manner, that it is unable to conceive of a means to effectively redact the warrant utilized to render certain aspects of the search and seizure conducted legal. *See United States v. Christine,* 687 F.2d 749, 758–59 (3d Cir.1982). Nor, in any event, is redaction appropriate where what is at issue here is the return of evidence, and not its suppression, as was the issue in *Christine.*

7. There is no question but that the court may exercise its discretion to stay proceedings in a civil action until a related criminal dispute is resolved. *See, e.g., United States v. Kordel,* 397

U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970); *DeVita v. Sills,* 422 F.2d 1172, 1181 (3d Cir.1970). *See generally Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952); *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936).